IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Aileen Robinson, | |
| Plaintiff, | |
| v. | Case No: 2024-cv-3329 |
| The City of Chicago and Yolanda Talley, | |
| Defendants. | |

## COMPLAINT

Plaintiff Aileen Robinson states as follows as her complaint against Defendants, the City of Chicago and Yolanda Talley:

### SUMMARY

1. Aileen Robinson has dedicated her professional life to helping victims of crime, domestic violence, and sexual misconduct. She does so primarily through her role as the assistant director for crime victim services for the City of Chicago Police Department where she has dedicated the last 24 years of her career. She is the most senior civilian law enforcement professional on the leadership team in Community Policing, and at the time of the incidents at issue she was the only woman on the senior leadership team for the Office of Community Policing.

2. It is now Ms. Robinson who is the victim of harassment, intimidation, and retaliation by the Chicago Police Department itself.

3. In 2022, Robinson became both a target and witness of harassment by high-ranking officials within the police department. The work environment included scores of inappropriate and offensive incidents including male counterparts forcibly grabbing Ms. Robinson by the arm, high-ranking officials referring to a female secretary as the "bitch" in open staff meetings, cat-calling women in the department as "sexy," inappropriately hovering around the desks of women and leering at them, using public workspaces to strip down and change clothes in front of women.

4. Robinson committed the cardinal sin at the police department of complaining about these acts and speaking out about the environment. Shortly after she complained, one senior police department official aggressively grabbed Robinson and threatened Robinson telling her "this is not an EEOC complaint."

5. Robinson, however, would not be silenced and she submitted complaints about the toxic work environment and spoke about it publicly. In May 2022, the Chicago Sun-Times published an article about the hostile work environment, *CPD Supervisors Reassigned Following Claims They Fostered Hostile Work Environment*, in which she provided information about the hostile work environment.

6. Rather than addressing the hostile work environment, the Chicago Police Department turned its attention and ire on Robinson and repeatedly retaliated against her. After her complaints and the Sun-Times article, the department opened a year-long internal affairs investigation of Robinson's conduct. She was subjected to internal affairs questioning and a three-week unpaid suspension to silence her and others like her for speaking up about their experiences within the Police Department. The retaliatory

punishment imposed by internal affairs was unprecedented, opposed by the peer-review board, and a violation of Robinson's rights to free speech.

7. In addition, the Department retaliated against Robinson by blackballing her from other career opportunities, denying her basic safety requests, yelling at her in public, increasing her workload, attempting to relocate her office to a storage closet, denying her parking privileges, and otherwise sabotaging her ability to work in a professional and safe environment.

8. Robinson brings three claims against defendants for the willful and intentional violations of her statutory and constitutional rights including claims for (i) first amendment retaliation under 42 U.S.C. § 1983, and (ii) hostile work environment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §2000(e) *et seq.*, and (iii) retaliation under Title VII.

## JURISDICTION AND VENUE

9. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331. Venue is proper under 28 U.S.C. § 1391 in the Northern District of Illinois because Plaintiff resides in this district and the events that gave rise to this claim occurred in this district.

**FACTUAL BACKGROUND**

10. Plaintiff, Aileen Robinson, is an individual residing in Cook County, Illinois and she was, at all times relevant, employed by the City of Chicago Police Department.

11. Defendant City of Chicago is a municipal entity responsible for the oversight and administration of the Chicago Police Department. Defendant Yolanda Talley is, and at all relevant times has been, the Chief of Internal Affairs for the Chicago Police Department.

12. Defendants discriminated against Robinson by creating a hostile work environment, retaliating against her after she complained, and violating her first amendment rights after she spoke out publicly about the sexually charged and offensive work environment within the Chicago Police Department.

13. The work environment at the Chicago Police Department is, at times, an old boys club, and at other times, more akin to a fraternity house. Robinson endured the environment for years. In 2022, she made the mistake of submitting official complaints of such conduct and speaking out about the work environment.

14. For example, in early 2022, Robinson attended a department meeting and witnessed one high ranking official of the Police Department publicly refer to a female secretary as the "bitch."

15. This same high-ranking official of the department also called women "sexy" when walking by them in the hallways or made other similarly inappropriate comments in the workplace.

4

16. Acts of this nature were so prevalent, and officials so emboldened, that another male official used the public area cubicles to disrobe and change clothes without regard to the women in the area.

17. After Robinson (and others) complained about the environment, things quickly turned worse for her. In April 2022, a police department official physically grabbed Robinson around the arm during a staff meeting to silence her from speaking. Robinson shook her arm free, telling the official not to touch her like that. The male official looked straight at Robinson, warning her: "This is not an EEOC complaint."

18. Robinson reported the incidents and further raised her concerns about the increasingly hostile environment to the Chief of Police and Director. Despite her complaint, the department failed to act. In fact, it got worse as the department turned against Robinson.

19. Shortly after complaining about the inappropriate actions of the Commander—and shortly after the Commander was made aware of the complaint against him—Robinson received an email invitation from him requesting that she attend a "Coffee with the Commander" meeting. When Robinson inquired about the purpose of the meeting, she was simply told that she need not attend.

20. The next day, on or about April 28, Robinson went to the Commander's office to brief him on a domestic violence homicide. As she walked toward his office he stood up, took a tactical stance, and screamed at her to talk to someone else about the issue.

21. Robinson reported this behavior and informed the Department that she did not feel safe. Indeed, she began suffering from panic attacks, lost her hair, and suffered additional physical and mental issues that resulted in her needing medical care and medication. Her panic attacks were so severe that on April 30, 2022—after seeing the Captain's car parked in front of the building—she was unable to get out of her own car to go into the office. After a time, she walked into the building, went to her office, and broke down crying in another panic attack.

22. Her medical providers informed her that she should not return to the Police Department until her safety concerns were addressed.

23. Robinson took administrative leave of absence beginning on May 2, 2022, which continued until May 6 at which time the Department directed her to return to work. The Department promised that it had removed both the Commander and Captain from the building and, to the extent either of them needed to come to the building, the department would provide advance notice to Robinson.

24. But the Department's promises to remedy the situation were hollow. Both the Commander and Captain were soon regularly back to the office and the Department refused to provide Robinson with notice of their attendance at the facilities.

25. In the Spring of 2022, for example, Robinson participated in a campaign featuring the Department's top female leaders. She was honored to be invited, but upon arriving at the event, she discovered that the Commander was also in attendance. His presence, and the Department's failure to provide her with notice, triggered an episode of hyperventilation and crying. She was "dismissed" and told to leave the event.

26. Robinson faced additional and repeated workplace retaliation. By way of example, the department once tried to relocate her office into storage facility; it refused to provide her a parking space even though she outranked others that received parking spaces; officials demeaned her and increased her workload; and officials blackballed her from other job opportunities within the City of Chicago despite her qualifications for those opportunities.

*Sun Times Article and Suspension*

27. In the Spring of 2022, the Chicago Sun-Times was investigating the hostile work environment at the Police Department. As part of its investigation, its investigative journalist spoke with Robinson about her own experiences within the department.

28. Robinson agreed to share some of her experiences, but she feared further retaliation and spoke to the Sun-Times on condition of anonymity. On May 12, 2022, the Sun-Times published an article about the hostile work environment within the Chicago Police Department.

29. Robinson's comments regarding her experiences as a victim at the police department are a matter of public concern.

30. Rather than address the hostile work environment, the Police Department retaliated against Robinson in a further effort to muzzle her, and others like her in the future. It opened an investigation into Robinson and directed her to keep quiet about the work environment—she was not to speak with anyone about her situation while the Department investigated the publication of the article.

31. As part of that investigation, Internal Affairs summoned her to their offices for an interview in which they badgered her about speaking with the Sun-Times. Robinson expressed her belief that the department was retaliating against her, but the department persisted and required her to sit for an interview. Robinson emphasized that she was the victim in this case and that she should not be silenced or otherwise prevented from talking about what happened to her.

32. On August 9, 2023, after a year-long Internal Affairs investigation, Yolanda Talley, the Chief of Internal Affairs for the Chicago Police Department, issued discipline to Robinson for her protected actions in speaking to the press.

33. Specifically, Robinson received an unprecedented 21-day suspension without pay. Other employees who committed far more serious and dangerous rule violations were treated more favorably.

34. When internal affairs issues discipline, the determination is reviewed though the Command Channel Review process as to what the punishment should entail.

35. In Robinson's case, her supervisors recommended a much lower suspension because the discipline was excessive.

36. However, Talley decided to reject that recommendation and issued Robinson a 21-day suspension.

## COUNT I
### First Amendment Retaliation under 42 U.S.C. § 1983
### Against Yolanda Talley

37. Robinson realleges and incorporates by reference paragraphs 1-36 as if fully set forth herein.

38. The First Amendment to the United States Constitution guarantees Robinson's rights to speak out on matters of public concern without fear of unjust retaliation.

39. Robinson engaged in protected speech when she spoke with the Chicago Sun-Times on matters of public concern and disclosing incidences of the hostile work environment at the Chicago Police Department and misconduct of officials including the Captain and Commander.

40. Robinson engaged in protected speech on matters of public concern by speaking out in the media about the City of Chicago Police Department's hostile work environment.

41. As a result of Robinson's protected speech, Yolanda Talley retaliated against Plaintiff and disciplined her for her protected speech.

42. Indeed, Robinson was wrongfully suspended for 21 days solely due to Robinson's exercise of her First Amendment rights by speaking to the press as a private citizen about a matter of public concern.

43. Robinson was speaking as a citizen engaged in constitutionally protected First Amendment activity, rather than acting as an employee of the City of Chicago.

44. Robinson's free speech was a matter of public concern.

9

45. Robinson has a valid interest as a citizen of the community in commenting on matters of public concern.

46. Retaliation against Robinson was devised, approved, and carried out by an individual, Yolanda Talley, who has final policymaking authority with respect to the actions taken. The City of Chicago has final policy making authority in the discipline of Robinson.

47. The adverse action taken by the City of Chicago and Yolanda Talley against Robinson was motivated as a response to Robinson's exercise of her constitutional free speech rights.

48. The adverse action taken by the City of Chicago and Yolanda Talley against Robinson has caused Robinson to suffer a loss of employment for 21 days, a loss of other employment opportunities, and economic injuries that are likely to deter a person from engaging in free speech.

## COUNT II
### Hostile Work Environment under Title VII
### against the City of Chicago

49. Robinson realleges and incorporates by reference paragraphs 1-36 as if fully set forth herein.

50. Title VII of the Civil Rights Act of 1964, as amended, prohibits employment discrimination on the basis of sex, including sexual harassment by third parties and the creation of a hostile work environment. *See* 42 U.S.C. § 2000e, *et seq.*; *Equal Employment Opp. Comm'n v. Costco Wholesale Corp.*, 903 F.3d 618, 624 (7th Cir. 2018).

51. Robinson was subject to unwelcome harassment because of her sex while working at the City of Chicago Police Department.

52. Subsequently, Robinson became a victim of ongoing severe and pervasive harassment altering the conditions of her work environment and creating a hostile working environment.

53. The City of Chicago Police Department was aware and/or should have been aware of the sexual harassment of Robinson at her place of work. It knew the incidents of sexual harassment were unwelcome to Robinson. The City of Chicago knew or should have known that these incidents were so pervasive that they affected and altered Robinson's conditions of employment and created an offensive, intimidating, hostile and abusive work environment.

54. The hostile work environment adversely affected Robinson's psychological well-being, caused her to suffer from panic attacks, and interfered with her ability to perform her job responsibilities.

55. The City of Chicago failed to fairly investigate Robinson's claims, failed to take corrective action, and failed to abide by its own anti-discrimination policy.

56. The City of Chicago knowingly condoned sexual harassment against Robinson and failed to protect Robinson from the hostile and abusive work environment.

57. Defendant's conduct was wrongful in at least that Defendant:

   a. Failed to provide Robinson with an atmosphere of employment where she could safely work, free from physical and verbal harassment, intimidation and retaliation;

   b. Failed to promptly respond to Robinson's complaints of harassment;

   c. Failed to properly implement, update, and enforce an effective antidiscrimination/sexual harassment policy or procedure to prevent such discrimination and retaliation.

58. As a direct and proximate result of Defendant's unlawful employment practices and disregard for Plaintiff's federally protected rights and dignity, Plaintiff has lost and will continue to suffer damages, such as mental anguish and humiliation as well as anxiety, and loss of income and benefits.

## COUNT III
### Retaliation under Title VII
### Against the City of Chicago

59. Robinson realleges and incorporates by reference paragraphs 1-36 of her Complaint as if fully set forth herein.

60. Robinson engaged in protected activity when she asserted her rights under Title VII of the Civil Rights Act of 1964 and opposed unlawful acts of sex discrimination and sexual harassment.

61. Robinson's suspension and other losses were in direct retaliation for having complained and protected about sexual harassment.

62. The unlawful employment practices complained of were intentional and done with malice or reckless indifference to the federally protected rights of Plaintiff, in violation of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-3(a).

63. Title VII of the Civil Rights Act of 1964, as amended, prohibits retaliation for an employee's complaints about what they reasonably perceive as discrimination in the workplace.

64. The City of Chicago willfully and improperly denied Robinson's equal job terms and conditions in direct retaliation because of her complaints and objections about sexual harassment and the hostile work environment.

65. As a direct and proximate result of the City of Chicago's unlawful employment practices and disregard for Plaintiff's federally protected rights and dignity, Robinson has lost and will continue to suffer damages, such as mental anguish and humiliation as well as anxiety, and loss of income and benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Aileen Robinson seeks judgment against the City of Chicago and Yolanda Talley and all relief available as a result of their unlawful actions including compensatory damages, punitive damages, attorneys' fees costs, and all other forms of relief available in law and equity.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Dated: April 25, 2024

Respectfully Submitted,

Aileen Robinson

By: */s/ Peter S. Roeser*
One of her Attorneys

Peter S. Roeser | Matthew D. Tanner
**ROESER TANNER & GRAHAM LLC**
2 North Riverside Plaza Ste 1850
Chicago, IL 60606
312-621-0303
proeser@rtglaw.com
mtanner@rtglaw.com